[No. 4,213.]

## EDWARD M. MARTIN *v.* JAMES PARSONS AND W. C. McDOWELL.

WHEN EQUITY WILL RESTRAIN THE USE OF A JUDGMENT AS AN ESTOPPEL.—
If, in an action to enforce a lien on land for delinquent taxes, there is no service of summons, and no appearance by the defendants, and the Court Commissioner drafts the decree, and either fraudulently or by neglect, inserts a clause in the decree that the summons has been served, and the Judge, deceived by the false recitals in the decree, signs it, and orders it to be entered as the judgment of the Court, and, at the Sheriff's sale under the decree, the Court Commissioner becomes the purchaser, and obtains a Sheriff's deed, a Court of equity will give relief to the owner of the property, by restraining the purchaser from setting up the judgment as an estoppel, or from using it to perpetuate the advantage he has gained.

JUDGMENT WRONGFULLY OBTAINED.—If a judgment is obtained by the wrongful act of a person, without service of summons, it is against good conscience to allow him to profit by his own wrong, even if the judgment recites that the summons was served.

WHEN EQUITY WILL PREVENT USE OF JUDGMENT.—While it may be true that a Court of equity will not vacate a judgment, obtained by the wrongful act of a party without service of summons, still it will interfere to prevent the party thus obtaining it from using it as an instrument of injustice.

APPEAL from the District Court, Sixth Judicial District, County of Sacramento.

The plaintiff, in his complaint, averred that he was in possession of the north half of the south half of lot number eight, in the block between N and O, and Fourth and Fifth streets, in the city of Sacramento, and claimed title in fee to the same, and that the defendants claimed an interest therein adverse to the plaintiff. The defendants answered, and then asked for affirmative relief by way of cross-complaint. The plaintiff demurred to the cross-complaint, and the Court below sustained the demurrer. The defendants filed an amended answer, denying the allegation that the plaintiff owned the premises, and setting up, by way of cross-complaint, the matters stated in the opinion. The Court, on motion of the plaintiff, struck out the cross-complaint. The case was then tried. The decree in the tax suit was prepared by the plaintiff as Court Commissioner, in May, 1871. The sale by the Sheriff was made in February, 1872. D. E. Alexander, with whom the plaintiff is alleged to have formed a partnership in the purchase of land at tax sales, was the Deputy District Attorney for the county of Sacramento. The Court rendered judgment for the plaintiff, and the defendants appealed from the judgment, and from an order denying him a new trial.

The other facts are stated in the opinion.

*Thomas J. Clunie* and *Freeman & Alexander*, for the Appellants.

A judgment taken without acquiring jurisdiction, and a sale based thereon, will be relieved against in equity.

(*Ingle* v. *Hannah*, 1 Heisk, 26; *Stubbs* v. *Leavitt*, 30 Ala. 352; *Tyler* v. *Tyler*, 1 Heisk, 734; *Bridgeport Savings Bank* v. *Eldridge*, 28 Conn. 556; *Newcomb* v. *Dewey*, 27 Iowa. 381.)

For the plaintiff in this action, then acting as Court Commissioner, to draft and procure a decree to be entered when no process had been served, and when he had no reason to believe any process had been served, was, as against the defendants in the tax suit, a fraudulent act.

If a case of fraud be established, a Court of equity will set aside all transactions founded upon it, by whatever machinery they may have been effected. It is immaterial whether such machinery and contrivance consisted of a decree in equity and a purchase under it, or of a judgment at law, or of other transactions between the actors in the fraud. (Kerr on Fraud and Mistake, p. 44; *Munn* v. *Morrall*, 16 Barb. 221; *Burch* v. *Scott*, 1 Bland, ch. 112; *Johnston* v. *Loop*, 2 Tex. 331; *Wilson* v. *Montgomery*, 14 S. & M. 205; *Moore* v. *Gamble*, 1 Stock. 246; *Johnson* v. *Coleman*, 27 Wis. 452.)

We think it must be conceded that the facts stated in our answer would be sufficient to authorize the interposition of a Court of equity in our behalf, if those facts were stated in a complaint brought to set aside the judgment and sale. But it was contended in the Court below that such facts cannot be employed as a defense, and that our remedy, if any we have, is by an independent suit, to which the plaintiff in the tax suit should also be a party. To this we reply that the plaintiffs in that suit, to wit, the people of the State, are not parties interested in this controversy, nor has the law provided any means by which we can force them into Court in an action to set aside a judgment obtained by them. To require us to pursue any other remedy than the one we are now pursuing is, therefore, to deny us all means of relief. But it is not true that a sale based on a fraudulent judgment cannot be avoided without instituting proceedings against the judgment itself. Courts of equity, without vacating a judgment, may prevent it from being used as an instrument of injustice and oppression,

as will be seen from the following authorities. Thus in *Barnesly* v. *Powel*, 1 Ves. Sr, 119 and 286, a party who had obtained a decree in the Exchequer was restrained from claiming any benefit thereby or from setting it up in respect to real estate. In *Colclough* v. *Bolger*, 4 Dows, 54, the House of Lords ordered a sale to be set aside as fraudulent, though "it had the color of the protection of a decree of a Court of equity." In *McMillan* v. *Reynolds*, 11 Cal. 372, a bill was filed against a purchaser to remove a cloud from title of complainants which, as was alleged, had been clouded by a sale under a decree of foreclosure, and which decree had been obtained without serving summons on one of the defendants. The bill was sustained and the sale set aside, the purchaser having been attorney for the plaintiff in the foreclosure suit. In *Galatian* v. *Erwin*, Hop. Ch. 48, a bill was filed to foreclose mortgages and a cross-bill was filed tending to impeach certain proceedings in partition as fraudulent. Though it was not possible in this suit to set aside the decree of partition, yet the title thereunder was declared invalid, and the bill of the mortgagees was therefore dismissed. If a judgment be sued upon, the defendant as an equitable defense may show fraud in its procurement. (*Dobson* v. *Pearce*, 12 N. Y. 164.) In the case of *The Bridgeport Savings Bank* v. *Eldridge*, 28 Conn., a first mortgagee had obtained a decree of foreclosure, and the time for redemption had expired. The record of this suit recited service of summons on the second mortgagees. This recital was false. The second mortgagees brought a bill to redeem, and the former decree and its false recital were asserted against them. But the Court held that "in preventing the defendants, under these circumstances, from taking advantage of that decree in this case, we only preclude them from availing themselves of a decree which they could not conscientiously have obtained if they had been aware of the want of notice to the defendants in the case, and of which they can now no more conscientiously avail themselves since the want of such notice has come to their knowledge." The second mortgagees

were therefore allowed to redeem, and that is all we wish to do in this case.

*Edward M. Martin* and *McCune & Welty,* for the Respondent.

The taxes were legally levied and assessed, and were unpaid ; and the lien for taxes was regularly foreclosed, making all owners and the real estate parties.

All matters pleaded by defendants as occurring before the entry of the tax decree are merged in the decree, and the case, as to those matters, falls within the rule established in *Riley* v. *Lancaster,* 39 Cal. 355; *Truman* v. *Robinson,* 44 Cal. 623; *Hahn* v. *Kelly,* 34 Cal. 407; *Carpentier* v. *City of Oakland,* 30 Cal. 446.

In this latter case the Court holds that " the validity of a judgment cannot be collaterally attacked on the ground of fraud, nor can it be attacked on the ground that the Court had no jurisdiction—whether the supposed want of jurisdiction is alleged as an element of fraud or not—unless the want of jurisdiction appears on the face of the record. The maxim of the law is that the judgment of a Court of general jurisdiction imports absolute verity, and its truth cannot be questioned, either by showing, otherwise than by the record itself, that the Court had no jurisdiction, or that its jurisdiction was fraudulently procured. Both upon the merits of the cause of action, and upon all jurisdictional facts, the record imports absolute verity in law, and is to be tried by the Court on inspection of the record only."

By the Court, CROCKETT, J.

The Court below erred in striking out the amended cross-complaint. The action is to quiet the plaintiff's title to a lot purchased by him at a sale made under a decree to enforce the lien for a delinquent tax. It is not claimed by the defendant that the proceedings culminating in the sale were not regular on their face; and the plaintiff contends that the case comes within the ruling in *Reeve* v. *Kennedy*

(43 Cal. 643), and *Stokes* v. *Geddes* (46 Cal. 17); *Jones* v. *Gillis* (45 Id. 541), and other kindred cases. In these cases we held that if the proceedings to enforce the lien were regular on their face, and the property was sold to a *bona fide* purchaser, without notice of any latent vice in the proceeding, the title of the purchaser could not be impeached by proof *aliunde* that the decree was obtained by fraud, or for any other reason, ought not to have been rendered. But in this case the cross-complaint alleges that the Court never acquired jurisdiction in the tax case, for the reason that neither the defendants, who were the owners of the property, nor the real estate itself, were ever served with any summons or notice of the pendency of the action, and never appeared therein; and that the plaintiff was then the Court Commissioner, and drafted the decree in said cause, "and inserted therein the false statement that the defendant in said tax case and all owners and claimants of the said real estate had been summoned to answer the complaint in said tax case; whereas, in truth and in fact, neither the said real estate nor any defendant in said tax case, nor any other person or thing, had ever been by any means summoned in said tax suit." The complaint then avers that these recitals were inserted in the decree by the plaintiff, without having any evidence of the service of a summons, and that no proof of the service of any summons was made or filed in the cause; that the Judge, being deceived by the false recitals in the decree, signed it, and ordered it to be entered as the judgment of the Court; that the defendants had no knowledge or notice of the pendency of the action or of any of the proceedings therein; that no notice of the time or place of sale was ever given; that the plaintiff has no title, except what he derived under the Sheriff's deed; that the lot was worth eighteen hundred and fifty dollars; but was struck off to the plaintiff for fifty-three dollars and seventy-six cents; that before the sale, plaintiff being Court Commissioner, had entered into a special partnership with D. E. Alexander, for the purpose of buying lands at tax sales, on speculation; that before the time for redemption had expired, the defendants called on the plaintiff for the purpose

of redeeming the lot, but were informed by him that the time for redemption had expired, and that no redemption could be made; that relying on this representation they made no further effort to redeem, until after the time for redemption had expired. The prayer of the cross-complaint is that the defendants be adjudged to be the owners of the property, and that the plaintiff be enjoined from claiming any interest therein; that the judgment, sale and Sheriff's deed be declared fraudulent and void; that the plaintiff be required, on such terms as may be just, to convey his title to the defendants, and to surrender the possession, and for general relief. It will be observed that fraud in fact is not, by direct averment, imputed to the plaintiff; but, if the allegations of the cross-complaint are true, he has, through his own laches or neglect (to give it the mildest name), obtained an unconscionable advantage over the defendants, against which a Court of equity will afford the appropriate relief. Whether the false recitals were inserted in the decree through fraud, or merely from the negligence or mistake of the plaintiff, is immaterial. It was through his fault that the decree was obtained without a service of process, and it would be against good conscience to allow him to profit by his own wrong. In such a case it is not necessary to vacate the judgment, but only to restrain the plaintiff from setting it up as an estoppel, to perpetuate the wrong resulting from his own misconduct. This is a familiar ground for the interposition of a Court of equity. While it may be true that a Court of equity will not vacate the judgment under such circumstances, it is clear that it will interfere to prevent the use of it as an instrument of injustice by the author of the wrong. (*Barnesly* v. *Powel*, 1 Ves. Sr. 119, 28𝔰; *McMillan* v. *Reynolds*, 11 Cal. 372; *Galatian* v. *Erwin*, Hopk. Ch. 48; *Dobson* v. *Pierce*, 12 N. Y. 164; *The Bridgeport Bank* v. *Eldridge*, 28 Conn. 556; *Murray* v. *Dake*, 46 Cal. 645.)

It would be a reproach to our jurisprudence if a Court of equity could afford no relief in such a case as that stated in the cross-complaint.

Order and judgment reversed, and a new trial ordered,

with a direction to the Court below to vacate the order striking out the cross-complaint.

Mr. Justice McKINSTRY did not express an opinion.